# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| PARALLEL NETWORKS LICENSING, LLC, § § § | |
| *Plaintiff*, § § | Civil Action No. 4:19-cv-516 |
| v. § § | Judge Mazzant |
| SUPERIOR TURNKEY SOLUTIONS GROUP, INC, § § § | |
| *Defendant*. § § § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Stay (Dkt. #17). After consideration, the Court is of the opinion that Defendant's Motion should be **DENIED**.

## BACKGROUND

### I. Factual Summary

This is a patent infringement case. Plaintiff Parallel Networks Licensing, LLC ("Parallel Networks") alleges Defendant Superior Turnkey Solutions Group, Inc. ("Superior Turnkey") directly infringed United States Patent Nos. 5,894,554 and 6,415,335 (collectively, the "patents-in-suit") (Dkt. #1). The patents-in-suit cover a method and apparatus for "creating and managing custom Web sites" (Dkt. #1, pp. 2–3). Parallel Networks purports to be the assignee and owner of the right, title, and interests of the patents-in-suit (Dkt. #1, pp. 2, 11, 15). Hence, Parallel Networks claims it has the right to assert all causes of action and the right to any remedies from infringement of the patents-in-suit (Dkt. #1, pp. 11, 15).[1]

Between July 3, 2019, and July 12, 2019, Parallel Networks filed this case and one other

---

[1] Since 2005, the patents-in-suit have been asserted against more than thirty (30) companies (Dkt. #17-2, p. 6).

case related to the patents-in-suit in this Court (Dkt. #17, p. 2). *See* Complaint for Patent Infringement, *Parallel Networks Licensing, LLC v. RamQuest, Inc.*, No. 4:19-cv-487-ALM. In both cases, Parallel Networks alleges the defendant directly infringed the patents-in-suit when using, or providing and causing to be used, certain products including but not limited to NetScaler or ADC products manufactured by Citrix Systems, Inc. ("Citrix") (Dkt. #1, pp. 11, 15–16; Dkt. #17, p. 2). Also, in both cases, the defendants are customers of Citrix (Dkt. #17, p. 2).

On October 23, 2019, in response to the suits filed against its customers, Citrix filed a Complaint for Declaratory Judgment against Parallel Networks in the United States District Court for the District of Delaware (Dkt. #17, p. 2; Dkt. #17-2). *See* Complaint for Declaratory Judgment, *Citrix Systems, Inc. v. Parallel Networks Licensing, LLC*, No. 1:19-cv-2005-LPS. Citrix's Complaint asks the District Court in Delaware for a declaratory judgment of non-infringement of Citrix's products against Parallel Networks (Dkt. #17, p. 2; Dkt. #17-2, pp. 1, 3–4).

## II. Procedural History

On January 8, 2020, Superior Turnkey filed a motion to stay the action between Parallel Networks and Superior Turnkey until a resolution of the pending Citrix declaratory judgment action (Dkt. #17). On January 22, 2020, Parallel Networks filed a response (Dkt. #19). On January 29, 2020, Superior Turnkey filed a reply (Dkt. #20). On February 3, 2020, Parallel Networks filed a sur-reply (Dkt. #21).

On February 20, 2020, Superior Turnkey sought leave to file a supplemental exhibit—Parallel Networks' infringement contentions—in support of its motion to stay (Dkt. #25). On March 4, 2020, Parallel Networks filed a response (Dkt. #27). On March 20, 2020, the Court granted Superior Turnkey's motion to supplement its motion to stay with Parallel Networks'

infringement contentions (Dkt. #29).

## LEGAL STANDARD

A district court possesses the inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In managing its docket, a court must exercise judgment, weighing competing interests and maintaining an even balance. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). The Supreme Court has repeatedly observed that under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation. *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (quotations omitted).

> When faced with a motion to stay litigation of an issue in the first-filed case, this Court considers: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."

*CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *8 (E.D. Tex. Aug. 22, 2018) (quoting *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)). In determining whether to stay a case pending the resolution of a related case, district courts employ a "flexible approach" if doing so will result in "substantial savings of litigation resources." *In re Google Inc.*, 588 F. App'x at 991.

## ANALYSIS

Superior Turnkey moves the Court to stay this case pursuant to the customer-suit exception to the first-to-file rule (Dkt. #17).

The "guiding principles" of the customer-suit exception to the first-to-file rule are "efficiency and judicial economy." *Tegic Commc'ns Corp. v. Board of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). The customer-suit exception is limited to situations in

which the defendant is "a mere reseller" of an allegedly infringing product, such that the disposition of a separate, contemporaneous suit against the manufacturer of that product would be determinative of the issues in the customer's suit. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081–82 (Fed. Cir. 1989). Courts should apply the customer-suit exception only when a stay would "resolve 'major issues' concerning the claims against the customer." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011). Hence, courts have declined to apply the customer-suit exception to cases when the manufacturer is charged with *indirect* infringement and the reseller is charged with *direct* infringement of a method patent because the two claims are not dispositive of each other—the outcome of the indirect infringement suit involving the manufacturer may not dispose entirely of all the claims in the direct infringement suit involving the customer. *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016); *see SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-cv-00295-JRG, 2019 WL 8331447, at *4 (E.D. Tex. Apr. 4, 2019) (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)).

The parties dispute whether this case falls within the customer-suit exception. In its motion, Superior Turnkey argues the customer-suit exception applies because it provided some evidence that it is "simply a seller" and "merely a customer"—not a user—of Citrix's "allegedly infringing goods" (Dkt. #17, pp. 2–3, 5; Dkt. #17-1). Superior Turnkey contends that "the subject of the dispute" is really between Parallel Networks and Citrix—not Parallel Networks and Superior Turnkey (Dkt. #26, p. 1).

In its response, Parallel Networks argues that Superior Turnkey is not "simply a seller of" Citrix products. Rather, Parallel Networks alleges that Superior Turnkey has directly infringed the method claims of the patents in suit: "The steps of the methods are alleged to be completed

by Superior Turnkey's use 'and/or providing and causing to be used,' [the accused Citrix products]—or products like them—alone, or in conjunction with a web server." (Dkt. #19, pp. 5–6) (citing Dkt. #1, pp. 11–12, 15–16). And Parallel Networks provided some evidence that Superior Turnkey directly infringed the method claims of the patents-in-suit by using, or providing and causing to be used, Citrix products (Dkt. #19, p. 8; Dkt. #19-2; Dkt. #21, pp. 5–6).[2]

Thus, according to Parallel Networks, the Citrix declaratory judgment action would not be dispositive of the matter before this Court. Parallel Networks argues that "Citrix, insofar as it may be considered the 'manufacturer' in this case, is . . . not accused of direct infringement . . . [but] indirect infringement" (Dkt. #19, p. 6). Thus, Parallel Networks argues that the resolution of the declaratory judgment action initiated by Citrix in Delaware would only resolve Parallel Networks' claims as to Citrix (Dkt. #19, p. 7). And, therefore, Parallel Networks will still have a cause of action against Superior Turnkey regardless of the outcome in the Citrix declaratory judgment action (Dkt. #19, p. 7). In other words, Parallel Networks argues this case should not be stayed because the Citrix declaratory judgment action would not resolve the matter before the Court here. The Court agrees.

Regardless of the outcome in the Citrix declaratory judgment action, Parallel Networks will still have a cause of action against Superior Turnkey. Parallel Networks accuses Superior Turnkey of direct infringement as a user of—or as one who has provided and caused to be used—

---

[2] Parallel Networks offered evidence from Superior Turnkey's website and marketing material that contradicts the Affidavit of Josh Thomas, illustrating that Superior Turnkey is more than "merely a reseller" of Citrix products (Dkt. #19-2, pp. 2–3). Also, Parallel Networks offered some evidence through an online business database that Superior Turnkey may have revenues in excess of $20 million, further contradicting the Thomas Affidavit (Dkt. #19-1, pp. 2-7). Furthermore, Parallel Networks argues that the "Infringement Contentions change no issue before the [C]ourt . . . . Parallel Networks has been clear since the filing of its complaint . . . Superior Turnkey is alleged to directly infringe method patents owned by Parallel Networks by using 'and/or providing and causing to be used' [Citrix products]—or products like them—alone, or in conjunction with a web server" (Dkt. #27, p. 1).

the method patents-in-suit. Whereas, the central issue between Parallel Networks and Citrix is whether Citrix is liable for indirect infringement. Adjudication of the Citrix declaratory judgment action would not resolve this case because Parallel Networks must still prove that Superior Turnkey directly infringed. *See Sas Inst.*, 2019 WL 8331447, at *4. And a finding that Citrix did not indirectly infringe the patents-in-suit would not preclude a finding of Superior Turnkey's direct infringement. *See id.* Moreover, Citrix's potential liability would not overlap entirely with the potential liability of Superior Turnkey—a major issue—because Citrix and Superior Turnkey have not been charged with identical acts of patent infringement. *See id.*

While the resolution of the Citrix declaratory judgement matter may resolve some issues in this case, the resolution of the Citrix matter would not be dispositive or resolve major issues of the case. Consequently, the Court is of the opinion that staying the action between Parallel Networks and Superior Turnkey fails to provide any incremental efficiency or judicial economy at this time. Accordingly, Superior Turnkey's motion to stay based on the customer-suit exception to the first-to-file rule should be denied.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Stay (Dkt. #17) is **DENIED**.

**SIGNED this 1st day of May, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE